1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT

7        FOR THE EASTERN DISTRICT OF CALIFORNIA

8

UNITED STATES OF AMERICA,
9
        Plaintiff,
10
                                    No. 2:02-CR-0349-DFL
11      v.

12  ELDEN LEROY HOLMES,            MEMORANDUM OF OPINION
                                         AND ORDER
13      Defendant.

14

15

16      The United States alleges that defendant Elden Leroy Holmes

17  violated the terms of supervised release by refusing to provide a

18  blood sample for the purpose of DNA testing.  Holmes states that

19  he is prepared to provide a DNA sample by other means, in

20  particular by buccal swab, which requires the light scraping of

21  the inside of the cheek.  Holmes filed a motion to dismiss the

22  government's petition, requesting an exemption from the

23  requirement or an alternative means of providing DNA due to his

24  religious objection to giving blood.  The court finds that

25  Holmes' religious exercise would be substantially burdened by

26  forcing him to provide a blood sample and that the government has

    failed to demonstrate a compelling interest in collecting DNA

                                1

through a blood sample rather than by an equally reliable buccal

swab DNA sample to be obtained by the State of California at no

cost or burden to the federal government.  The court GRANTS the

motion to dismiss, contingent upon the successful entry of

Holmes' DNA profile into the Combined Offender DNA Index System

(CODIS), via the California DNA databank.

I.

Under the Violent Crime Control and Law Enforcement Act of

1994, 42 U.S.C. §§ 13701, et seq., the FBI established CODIS, an

index of DNA samples from convicted offenders, crime scenes, and

unidentified human remains.  Section 14135a(d)(1) requires

probation officers to collect a DNA sample from individuals on

federal supervised release.  Failure to cooperate with probation

officers exposes individuals on release to misdemeanor charges

and the revocation of release.  Id. § 14135a(a)(5).  Section

14135a(a)(4)(B) allows "[t]he Attorney General, the Director of

the Bureau of Prisons, or the probation office, as appropriate,

[to] enter into agreements with units of State or local

government or with private entities to provide for the collection

of the samples."  Section 14153a(b), however, requires that "the

probation office responsible (as applicable) shall furnish each

DNA sample collected under subsection (a) of this section to the

Director of the Federal Bureau of Investigation, who shall carry

out a DNA analysis on each such DNA sample and include the

results in CODIS."[1]  For individuals already included in CODIS,

"the probation office responsible (as applicable) may (but need

not) collect a DNA sample from that individual."  Id.

§ 14135a(a)(3).  The FBI laboratory is capable of processing only

blood samples to obtain DNA profiles.  All laboratories

participating in CODIS, whether using blood or buccal samples to

obtain DNA, must comply with the FBI's quality assurance

standards.  Id. § 14132(b)(1).

Holmes does not dispute that he must provide a DNA sample to

comply with the conditions of his supervised release.  Rather, he

argues that under the Religious Freedom Restoration Act (RFRA),

42 U.S.C. §§ 2000bb, et seq., the government's requirement that

he submit his DNA through a blood sample imposes a substantial

burden upon his free exercise of religion.  Holmes does not

consider himself a member of an organized religion.  In his

individual belief system, however, Holmes describes blood as "the

most evocative symbol of life we have" and giving blood as a

matter "between me and God, period."  He states that his blood

"contains my soul" and that giving blood "would result in a

sacrifice of my soul."  According to Holmes, his blood contains

his "contract" with God; the removal of blood from his body

breaches this contract.  See Holmes Declaration.  Thus, if he

were to give a blood sample, it would create "a deep spiritual

---

[1] The analysis of different DNA samples, such as blood cells
or cheek cells, from the same individual will produce identical
DNA profiles.  The profiles, not the samples, are uploaded into
CODIS.

1  wound."  Holmes analogizes the injury to disrespectful acts

2  targeted at central symbols of organized religions.[2]  He states

3  that his beliefs are long-held as a matter of conscience.  Other

4  than having blood drawn during service in the Navy and giving

5  blood to help a particular person, the government presents no

6  specific instances in which Holmes has violated his professed

7  beliefs.

8                              II.

9      "Under RFRA, the Federal Government may not, as a statutory

10  matter, substantially burden a person's exercise of religion,

11  'even if the burden results from a rule of general

12  applicability.'"  <u>Gonzales v. O Centro Espirita Beneficente Uniao</u>

13  <u>Do Vegetal, et al.</u>, 126 S.Ct. 1211, 1217 (2006) (quoting 42

14  U.S.C. § 2000bb-1(a)).  RFRA recognizes an exception, however, if

15  "that application of the burden to the person- (1) is in

16  furtherance of a compelling governmental interest; and (2) is the

17  least restrictive means of furthering that compelling

18  governmental interest."  42 U.S.C. § 2000bb-1(b).  The parties do

19  not dispute that the applicable DNA testing requirements are laws

20  of general applicability.  Therefore, the court first considers

21  whether requiring a blood-based DNA sample substantially burdens

22  Holmes' exercise of religion, then considers whether the

23  government's conduct is exempted from RFRA in this instance.

24

25      [2] Holmes states that taking his blood would inflict an
26  injury similar to "jackhammer[ing] [the Kaaba] into a bunch of
   sand" or "open[ing] up the Ark of the Covenant, pull[ing] out my
   contract with God, and us[ing] it for whatever you want."

4

A.   Substantial Burden Upon Free Exercise

Legal protection for free exercise of religion is not limited only to those practicing an organized religion.  Rather, it extends to an individual's personal relationship with a creator or higher power.  See Davis v. Beacon, 133 U.S. 333, 342 (1890)(overruled on other grounds); Callahan v. Woods, 658 F.2d 679, 685 (9th Cir. 1981)(extending free exercise protection to "nontraditional beliefs").[3]  The court does not enquire into the objective truth of such beliefs.[4]  See United States v. Ballard, 322 U.S. 78, 87 (1944).  Under RFRA, "[t]he term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000bb-2(4).  A substantial burden is placed upon religious exercise when the government places "pressure on an adherent to modify his behavior and to violate his beliefs."  May v. Baldwin, 109 F.3d 557, 563 (9th Cir. 1997)(quoting Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981)).  A burden may still exist even if, on occasion, the plaintiff has acted against a stated religious belief.  May, 109 F.3d at 563.

It is true that Holmes' testimony was sometimes rambling and

---

[3] Pre-RFRA free exercise authority is instructive in defining "substantial burden" following RFRA's adoption.  Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (applying authority to RLUIPA).

[4] For this reason, the court does not delve into the accuracy of Holmes' belief that blood cells are alive while cheek cells captured by buccal swabs are dead.

5

1  grandiose.  He rather enjoys the sound of his own voice.

2  Nonetheless, based upon Holmes' declaration and testimony, the

3  court finds his professed beliefs to be sincere.[5]  Blood is

4  significant in Holmes' belief system as both a symbolic and

5  actual connection with God.  To Holmes, the extraction of blood

6  imposes a substantial burden by violating what he believes to be

7  a sacred relationship with God.  Although Holmes' description of

8  the potential injury invokes both religious and political

9  beliefs, "a coincidence of religious and secular claims in no way

10  extinguishes the weight appropriately accorded the religious

11  one."  Callahan, 658 F.2d at 684.  Moreover, although Holmes has

12  given blood on limited occasions, the court finds the

13  government's present request to be "more than an inconvenience,"

14  forcing him to "either abandon[] his religious principle or

15  fac[e] criminal prosecution."[6]  Guam v. Guerrero, 290 F.3d 1210,

16  1222 (9th Cir. 2002); see May, 109 F.3d at 563.  Having found

17  that the government's blood-based DNA test would impose a

18  substantial burden upon Holmes' free exercise of religion, the

19  _____

20  [5] Although Holmes had some difficulty during the hearing
    explaining the precise significance of blood in his belief

21  system, the court finds that his inarticulateness on the subject
    was consistent with the relatively difficult task of justifying

22  and explaining a specific component of one's religious life.  See
    Callahan, 658 F.2d at 686 ("[A] person's free exercise should not

23  be curtailed simply because his beliefs are not articulated with
    the clarity and precision that a more sophisticated person might

24  enjoy." (internal quotation marks and citation omitted)).

25  [6] The government argues that Holmes' prior intravenous drug
    use is inconsistent with his proffered religious beliefs.

26  Perhaps there is some inconsistency, but it is not of a sort that
    would suggest that Holmes' description of his religious beliefs
    is false.

court must determine whether the government has demonstrated that "it serves a compelling government interest in the least restrictive manner possible." Guerrero, 290 F.3d at 1222.

B.   Compelling Interest

"RFRA requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person' - the particular claimant whose sincere exercise of religion is being substantially burdened." O Centro Espirita Beneficente, 126 S.Ct. at 1220.  The government fails to address the alleged burden with sufficient particularity.  According to the government, the FBI laboratory is not set up to take buccal swabs.  If Holmes were seeking an order requiring the FBI to change its procedures, the government's position could well be persuasive.  Unfortunately for the government's legal position, however, Holmes is not asking the FBI to do anything that it does not already do.  In fact, he is offering to reduce any burden on the FBI.  He seeks an order requiring the FBI to accept a valid DNA profile taken by the State at no burden or cost to the FBI.

Holmes does not dispute that the government has a compelling interest in entering his DNA profile into CODIS.  He frames his argument more narrowly, arguing that the government has failed to demonstrate a compelling interest in obtaining his DNA profile through a blood sample as opposed to a buccal-swab sample collected by an authorized State laboratory.  Although the FBI laboratory is not equipped to handle a buccal swab sample,

7

California laboratories authorized under the FBI's quality assurance standards are capable of processing the sample and uploading the resulting DNA profile into CODIS.  As stated by Dr. Brian Harmon at the hearing, the DNA profile uploaded into CODIS does not differ depending upon whether it was drawn from a blood cell or a cheek cell.  By making the court's waiver of Holmes' supervised release condition contingent upon the successful uploading of his DNA profile into CODIS, the court addresses the government's concerns regarding the reliability of buccal swabs. The court, therefore, holds that the government has failed to demonstrate a compelling interest in forcing Holmes to submit to FBI-administered blood-based DNA testing rather than the California buccal swab test.

     C.   Least Restrictive Means

     Even if the court found the government's interest compelling, the government has not demonstrated that it is employing the least restrictive means to achieve that interest. In evaluating whether the government is employing the least restrictive means, comparison with alternative means is "analytically useful."  Warsoldier v. Woodford, 418 F.3d 989, 1000 (9th Cir. 2005).  Holmes stipulated at the hearing that California law requires him to submit a DNA sample for inclusion in CODIS.  Furthermore, he stated that he has made arrangements with a state parole officer to submit DNA by buccal swap, to be processed by a California laboratory and uploaded into CODIS at no cost to the federal government.  The government raises two

1   objections to this alternative means of obtaining Holmes' DNA

2   profile.  They are unpersuasive.

3       First, the government argues that Holmes has failed to

4   obtain the FBI Director's approval to collect DNA samples from

5   federal prisoners, as required by California Penal Code

6   § 296.1(a)(6).  Section 296.1(a)(6), however, applies only to

7   individuals "in federal institutions," not those such as Holmes

8   on supervised release.  Second, after the evidentiary hearing,

9   the government presented a declaration from a California

10  Department of Justice DNA Laboratory employee stating that, to

11  date, California "has not received or processed DNA samples of

12  federal convicted offenders."  The court finds that this

13  declaration is insufficient to cast doubt upon Holmes' specific

14  representation, at the hearing, that he has made arrangements

15  with a California parole officer to submit to a buccal swab test

16  and have his DNA profile uploaded into CODIS through the

17  California system.  Moreover, the declaration was untimely and is

18  not properly considered.

19      Since the court's order is contingent upon the successful

20  uploading of Holmes' California sample, the court retains the

21  ability to revise its findings if Holmes' California test

22  alternative does not work out.  The court, therefore, holds that

23  forcing Holmes to submit to a blood-based DNA test is not the

24  least restrictive means of achieving the government's compelling

25  interest in obtaining his DNA profile.

26  ////

III.

For these reasons, the court ORDERS Holmes to submit to a buccal swab DNA test, as discussed at the hearing, and GRANTS the motion to dismiss the government's violation petition, contingent upon the successful uploading of Holmes' DNA profile into CODIS.

Holmes is ordered to submit to a buccal swab by an authorized California laboratory within 14 days of the date of this order.   The probation officer is directed to report to the court whether the results of the DNA buccal swab have been successfully included within the CODIS system.

IT IS SO ORDERED.

Dated: 2/20/2007

_____

DAVID F. LEVI
United States District Judge